**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jay A. Morrow, D.D.S., ) | No. CIV 06-2635-PHX-SMM |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF DECISION AND ORDER** |
| ) | |
| v. ) | |
| ) | |
| Boston Mutual Life Insurance Co., et al.,) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____) | |

Pending before the Court is Defendants Behavioral Management, Inc. ("BMI") and Bettina Kilburn, M.D.'s ("Dr. Kilburn") (collectively, "Defendants") Motion to Dismiss (Dkt. 65). Plaintiff Jay A. Morrow, D.D.S. ("Plaintiff") filed a responsive brief (Dkt. 81) and to which Defendants have replied (Dkt. 85). Having considered the pleadings and parties' briefs, the Court issues this memorandum of decision and order, granting Defendants' motion in part and denying in part.

**BACKGROUND**

This action against Defendants arises out of a disability insurance policy Plaintiff purchased from Boston Mutual Life Insurance Company ("Boston Mutual"). In 1995, severe complications arose during the birth of Plaintiff's twin sons. (Compl. ¶ 9.) Although Plaintiff's sons and wife all survived, Plaintiff suffered and continues to suffer anxiety, depression, and post-traumatic stress disorder as a result of the experience. (Compl. ¶ 11.)

1   In 2003, Plaintiff sold his dental practice and moved to Phoenix, hoping to
2  improve his psychiatric health. (Compl. ¶ 13.) Unfortunately, Plaintiff's anxiety and
3  depression have continued. In July 2003, Boston Mutual found that Plaintiff's symptoms
4  prevented him from practicing dentistry. (Compl. ¶ 11.) As a result, Plaintiff received
5  monthly disability payments beginning in late 2003 and continuing through the present.
6  (Compl. ¶ 36.) Plaintiff's claim has been handled by Disability Reinsurance Management
7  Services, Inc. ("DRMS"), Boston Mutual's claims administrator. (Compl. ¶ 3.)
8   In February 2006, DRMS hired BMI, which in turn hired Dr. Kilburn, to perform a
9  file review and provider consultation. (Compl. ¶¶ 38, 39.) That process involved Dr.
10 Kilburn reviewing certain of Plaintiff's medical records, and a telephonic consultation
11 with Plaintiff's then-treating physician. Dr. Kilburn then prepared a final report in which
12 she opined that Plaintiff was capable of returning to dentistry and that Plaintiff did not
13 have any functional limitations or restrictions. (Pl.'s Ex. 2.) However, Boston Mutual
14 did not follow Dr. Kilburn's recommendations, and Plaintiff's monthly disability benefits
15 continued uninterrupted. (Compl. ¶¶ 102, 103.)
16  Plaintiff alleges that Boston Mutual and its claims administrator engage in a "claim
17 termination scheme," in which they hire biased medical professionals to recommend the
18 denial or termination claims payment. (Compl. ¶¶ 97.) Plaintiff further alleges that
19 Boston Mutual and DRMS have targeted his claim for termination, and that his claim
20 would have been terminated in June 2006 had Plaintiff not discovered Boston Mutual's
21 scheme. (Compl. ¶¶ 37, 103.) Plaintiff alleges that the file review injured him because he
22 "must now live in a constant state of uncertainty as to whether Boston Mutual may decide
23 to arbitrarily cancel his benefits at some point in the future," and that this has "further
24 exacerbated his already frail mental health." (Compl. at ¶100.)
25  Plaintiff initiated this lawsuit in Maricopa County Superior Court. The Complaint
26 lists six causes of action: bad faith; substantial assistance to breach of fiduciary duty;
27 breach of contract; intentional infliction of emotional distress; civil conspiracy; and
28 tortious interference with prospective advantage. Defendants removed this case to federal

- 2 -

court, and have filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

## STANDARD OF REVIEW

A court should not dismiss a claim unless convinced beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.[1] Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint is "construed in the light most favorable to the plaintiff." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The Court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness. See Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649-50 (9th Cir. 1984). A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

In deciding a motion to dismiss, the court may consider allegations contained in a complaint, exhibits attached to the complaint, matters of public record, orders of record in the lawsuit, and other materials subject to judicial notice. See, e.g., Parks Sch. of Bus., 51 F.3d at 1484. The Ninth Circuit has held that "documents whose contents are alleged in [the] complaint and whose authenticity no party questions, but which are not physically

---

[1] The United States Supreme Court recently decided a case which brings the continued applicability of the Conley standard into question. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965-70 (2007) (applying a "plausibility" standard). Bell Atlantic involved a Sherman Act claim of conspiracy in restraint of trade, and the opinion is unclear as to whether the "plausibility" standard applies other contexts. See Iqbal v. Hasty, 490 F.3d 143, 153-59 (2d Cir. 2007). To date, the Ninth Circuit has not issued a written opinion construing the applicability of the "plausibility" standard. Therefore the Court in this matter will continue to apply the standard associated with Conley.

1 attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to
2 dismiss." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled in part, on other
3 grounds, by 307 F.3d 1119 (2002). Such consideration does not convert the motion to
4 dismiss into a motion for summary judgment. Id.

5 If the parties present extrinsic evidence in support of or in opposition to a motion
6 to dismiss, the Court has discretion regarding whether to consider the extrinsic evidence.
7 See Fed. R. Civ. P. 12(b). If the court does consider the extrinsic evidence, the motion
8 must be converted to a motion for summary judgment. Id.; Anderson v. Angelone, 86
9 F.3d 932, 934 (9th Cir. 1996).

## DISCUSSION

11 The Motion to Dismiss is directed to only four of the six claims in the Complaint:
12 Substantial Assistance to Breach of Fiduciary Duty; Outrageous Conduct; Civil
13 Conspiracy; and Tortious Interference with Prospective Advantage.

**A. Count Two - Substantial Assistance to Breach of Fiduciary Duty**

15 Count Two asserts a claim based on Restatement (Second) Torts § 876(b).
16 (Compl. ¶¶ 132-35.) That provision states "a party who substantially encourages or
17 assists another party to breach a duty owed to a third party and who knows that the other
18 party's conduct is tortious is liable for substantially assisting in that breach." Arizona
19 recognizes aiding and abetting as embodied in Restatement § 876, and holds a person
20 who aids and abets a tortfeasor liable for the resulting harm to a third person. Wells
21 Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension
22 Trust Fund, 38 P.3d 12, 23 (Ariz. 2002).

23 Count Two is puzzling in several ways. First, it seeks to hold Defendants liable
24 for aiding and abetting the breach of a duty not owed to Plaintiff. Second, it seeks to hold
25 agents liable for aiding and abetting a tort committed by the principal. As to the second
26 point, Defendants argue that the agency relationship between Defendants and Boston
27 Mutual/DRMS precludes Defendants' liability under Count Two. (Defs.' Br. at 6.)
28 Plaintiff responds that he has pled agency and non-agency in the alternative. (Pl.'s Resp.

1  Br. at 2-4.) Defendant counters that no alternative pleading has been made, and reasserts
2  that an agent cannot be held liable for assisting its principal.

3  <u>1. The absence of a pure fiduciary relationship</u>

4  In Arizona, an insurer is not a fiduciary for its insured. <u>Rawlings v. Apodaca</u>, 726
5  P.2d 565, 571 (Ariz. 1986). With no underlying fiduciary duty to breach, Defendant
6  argues that Count Two must be dismissed because there was nothing for Defendants to
7  "substantially encourage." (Defs.' Br. at 5.)

8  Plaintiff recognizes the lack of a true fiduciary relationship but points to the
9  "quasi-fiduciary" duties owed by insurers to insureds, such as equal consideration,
10 fairness, and honesty. (Pl.'s Resp. Br. at 4); <u>Rawlings</u>, 726 P.2d at 571. Plaintiff argues
11 that he has alleged that Defendants aided and abetted Boston Mutual in breaching those
12 quasi-fiduciary duties, (Pl.'s Resp. Br. at 4), though the Complaint refers only to
13 "fiduciary duties." Compl. at ¶ 134.

14 Under the notice pleading requirements of the Federal Rules of Civil Procedure, a
15 complaint need only give "fair notice" of the claims asserted and the grounds upon which
16 they rest. <u>Conley</u>, 355 U.S. at 47-48. Here, the Complaint puts Defendants on sufficient
17 notice that Count Two seeks damages for Defendants' alleged assistance to Boston
18 Mutual and DRMS as relates to insurance bad faith. Therefore the Court will treat Count
19 Two as a claim for aiding and abetting bad faith.

20 <u>2.  Alternative pleadings in the Complaint</u>

21 Issues of agency pertain to several of Plaintiff's claims, including Count Two.
22 Defendants argue that they are not separate entities from Boston Mutual and DRMS for
23 purposes of Count Two because Plaintiff alleges Defendants are agents of Boston Mutual
24 and DRMS. (Defs.' Br. at 6.) Plaintiff counters that he has pled the existence and non-
25 existence of agency in the alternative. (Pl.'s Br. at 2-3.) Plaintiff correctly notes that
26 parties may plead inconsistent, alternative theories under Rule 8(e)(2), and that alternative
27 claims need not include the words "in the alternative." But the alternative pleading must
28

comply with other requirements, such as the requirement that averments be "simple, concise, and direct." Fed. R. Civ. P. 8(e)(1).

Plaintiff points to Paragraph 124 of the Complaint as "establish[ing] that agency is being pled in the alternative." (Pl.'s Br. at 3.) Paragraph 124 states, in its entirety:

> While Boston Mutual and DRMS deny an agency relationship with BMI and Dr. Kilburn despite these indisputable facts, BMI and Dr. Kilburn are, at a minimum, the ostensible agents of Boston Mutual and DRMS as they have intentionally or inadvertently induced Dr. Morrow to believe than an agency relationship existed.
> (Compl. ¶ 124.)

The following paragraph continues, "Regardless, insurance claim administration is, by definition, a non-delegable duty, and therefore, BMI and Dr. Kilburn are agents of Boston Mutual and DRMS as a matter of law." (Compl. ¶ 125.) Paragraphs 124 and 125 fall within a section entitled "Additional Indicia of Agency." Taken together, the only alternative these paragraphs establish is between an agency relationship in fact and an agency relationship at law. That Boston Mutual and DRMS deny an agency relationship does not convert the existence of agency into an alternative argument.

Plaintiff also points to Paragraph 133 as establishing Plaintiff's alternative pleading. That paragraph quotes the Restatement (Second) of Torts for the elements of aiding and abetting liability, and refers to "another party." (Compl. ¶ 133.) According to Plaintiff, this reference "makes clear" that Count Two is being pled in the alternative. (Pl.'s Br. at 3.)

Construing the Complaint in a light most favorable to Plaintiff, it still cannot be said that Plaintiff has pled the existence and non-existence of an agency relationship in the alternative. The Complaint refers to an agency relationship between BMI, Boston Mutual and DRMS in eleven separate paragraphs;[2] eleven paragraphs also allege agency as relates to Dr. Kilburn.[3] Moreover, Plaintiff includes thirteen additional paragraphs under the

---

[2] See ¶¶ 4, 39, 90, 97, 99, 100, 101, 106, 107, 108, 129.

[3] See ¶¶ 5, 38, 39, 47, 49, 68, 99, 101, 107, 108, 129.

- 6 -

heading "Additional Indicia of Agency." (Compl. ¶¶ 114-126.)  Several paragraphs allege that an agency relationship existed "at all times relevant to this complaint," (e.g. ¶¶ 4, 5, 121), with no paragraphs setting out an exception.  Given the extensive allegations of agency throughout the Complaint, Plaintiff's allegation of a non-agency relationship is at best oblique, and in no way "direct."  Fed. R. Civ. P. 8(e)(1).  Therefore the Court will treat Count Two and the remaining Counts as operating within a principal-agent context.

### 3.  Agents' liability for aiding and abetting the principal

Having determined Count Two to plead a cause of action against Defendants for aiding and abetting Boston Mutual and DRMS to commit insurance bad faith, the Court now addresses Defendants' final objection to Count Two.  Defendants argue that the principal-agent relationship between Boston Mutual/DRMS and Defendants precludes aiding and abetting liability for breach of quasi-fiduciary duties.  (Defs.' Br. at 6.)  Defendants cite two cases for the proposition that an agent cannot be held liable to a third party for intentional interference with a contract because the agent is not a separate entity from the principal.[4]  (Id.)  Defendants view themselves as the same entity as Boston Mutual/DRMS for purposes of aiding and abetting the alleged bad faith, and would have Count Two dismissed on that basis.

Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach.  Wells Fargo, 38 P.3d at 23.  The party charged with the tort must have knowledge of the primary violation, and knowledge may be inferred from the circumstances.  Id.  Aiding and abetting liability is therefore based on proof of scienter.  Id.

---

[4] The Court addresses Plaintiff's tortious interference with prospective advantage *infra*.

- 7 -

In this case, Plaintiff alleges that Boston Mutual and DRMS are the primary tortfeasors and committed the tort of bad faith. (See Compl. ¶ 128.) Plaintiff alleges that Defendants were aware that Boston Mutual and DRMS's conduct breached a quasi-fiduciary duty to Plaintiff. (See, e.g., Compl. ¶¶ 47, 84, 85.) Finally, Plaintiff alleges that Defendants aided and abetted Boston Mutual by providing a biased and unsubstantiated opinion of Dr. Morrow's health and ability to return to work. (Compl. ¶ 85.) Assuming *arguendo* that Count One alleges a sufficient claim for bad faith, Count Two alleges a sufficient claim for aiding and abetting that bad faith.

Defendants cite Pasco Industries, Inc. v. Talco Recycling, Inc, 985 P.2d 535, 548 (Ariz. App. 1999) for the proposition that Defendants are not a separate entity from Boston Mutual or DRMS for purposes of the alleged breach of duty. (Defs.' Br. at 6.) Pasco involved a tort claim for interference with contract. That claim requires the existence of a contract between the plaintiff and a third party, and the claim was against all defendants "except the party that contracted with [plaintiff] on the ... contract," who knew of the relationship between plaintiff and the owner and operator of the facility involved. Pasco, 985 P.2d at 547-48. Defendant-agent operated the facility owned by the principal. The heading and body of the contract clearly stated that the contract was between "[defendant], agent for [principal], and [plaintiff]." Id. at 548. Therefore there was no third party as the contract was with the agent itself. Id.

Defendants also cite Wallace v. Casa Grande Union High School, 909 P.2d 486, 494-95 (Ariz. App. 1995) as precluding aiding and abetting liability for agents. There the court held that a school superintendent could not be held liable for tortious interference with contract when he recommended that plaintiff's contract not be renewed. See id. at 491, 494. The court held the superintendent was operating within the scope of employment, the decision not to renew did not violate Arizona law, the recommendations were not "improper," and plaintiff had no right to continued employment. Id. at 494-95. Therefore summary judgment for the superintendent was affirmed. The court noted that to hold otherwise would create "quite an anomaly; although having no claim against the

company for the supervisor's failure to promote her, [plaintiff] would have an intentional interference claim against the supervisor himself." Id. at 495 (citation omitted).

The Court finds neither of these cases necessarily support Defendants' position in this case. As a general principle, agents are liable to third parties harmed by the agent's tortious conduct, even when the conduct occurs within the scope of the agency. See, e.g., Restatement (Third) Agency § 7.01. A close reading of Pasco lends itself to two interpretations: either the agent was not liable for interference with the contract because the agent itself signed the contract; or the agent was not liable because its actions were taken on behalf of the principal, making the contract "its own." Unlike the agent in Pasco, Defendants are not direct parties to the contract in this case–the disability insurance policy. Unlike Wallace, Boston Mutual and DRMS's underlying bad faith, taken as true for purposes of a 12(b)(6) motion, does violate Arizona law. See, e.g., Rawlings, 726 P.2d at 569.

The Complaint sets forth a prima facie case against Defendants for aiding and abetting bad faith. Defendants' motion to dismiss Count Two is therefore denied.

**B. Count Four - Intentional Infliction of Emotional Distress**[5]

Count Four seeks damages for "outrageous conduct" on the part of Defendants. (Compl. ¶¶ 140-44.) Defendants correctly note that Arizona does not recognize such a tort. (Defs.' Br. at 6); Rowland v. Union Hills Country Club, 757 P.2d 105, 108 (Ariz. App. 1988). Plaintiff correctly notes that incorrect titling does not justify dismissing a cause of action. (Pl.'s Br. at 6.) Therefore the Court will examine Count Four as a claim for intentional infliction of emotional distress.

---

[5] Defendants' brief cites deposition testimony of Dr. Bowers, and Plaintiff's opposing brief cites the joint case management report. Presentation of matters outside the pleading can be excluded by the court, or the motion can be treated as one for summary judgment. See Fed. R. Civ. P. 12(b). As issues relating to Count Four can be decided without looking to these extrinsic matters, the Court excludes them and treats Defendants' motion as a 12(b)(6) motion to dismiss.

- 9 -

1    Arizona recognizes the tort of intentional infliction of emotional distress. Cluff v.
2 Farmers Ins. Exchange, 460 P.2d 666, 668 (Ariz. App. 1969) (internal citations omitted),
3 overruled on other grounds by Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781
4 (Ariz. 1989). Three elements are necessary to establish a claim of intentional infliction of
5 emotional distress: (1) defendant's conduct can be characterized as "extreme and
6 outrageous"; (2) defendant must intend to cause emotional distress or recklessly disregard
7 the "near certainty" that distress will result; and (3) defendant's conduct must cause severe
8 emotional distress. Lucchesi v. Frederic N. Stimmell, M.D., Ltd., 716 P.2d 1013, 1015-16
9 (Ariz. 1986).

10    The Court must determine as a threshold issue whether Defendants' conduct may
11 reasonably be regarded as so extreme and outrageous as to permit recovery. Id. at 1016.
12 A claim cannot arise out of conduct which "merely hurts one's feelings." Cluff, 460 P.2d
13 at 668. "Liability has been found only where the conduct has been so outrageous in
14 character, and so extreme in degree, as to go beyond all possible bounds of decency, and
15 to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the
16 case is one in which the recitation of facts to an average member of the community would
17 arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" Id.

18    Plaintiff asserts that the Complaint is "replete with outrageous acts committed by
19 each and every Defendant." (Pl's Br. at 6.) The "outrageous acts" can be fairly
20 summarized in the following categories: (1) Defendants are biased in favor of insurance
21 companies (see Compl. ¶¶ 45-92); (2) Dr. Kilburn prepared a false report suggesting that
22 Plaintiff could return to work, a suggestion that Boston Mutual did not follow (Compl. ¶¶
23 39, 40, 42, 102); (3) Dr. Kilburn engaged in "unprofessional conduct" as defined by the
24 Georgia Composite State Board of Medical Examiners (Compl. ¶ 52); (4) Dr. Kilburn was
25 involved in previous litigation in which her objectivity was questioned (Compl. ¶¶ 56-58);
26 (5) Dr. Kilburn "destroyed" documentation, notes and files regarding Plaintiff, except for
27 her final report (Compl. ¶ 58); and (6) Defendants' counsel sent a threatening letter to
28 Plaintiff's counsel (Compl. ¶ 115). This misconduct, "taking significant advantage of Dr.

- 10 -

1  Morrow and his medical condition in an effort to wrongfully terminate his claims for
2  benefits," is extreme and outrageous. (Compl. ¶ 113.)   Defendants argue that none of the
3  alleged conduct rises to the level of legally outrageous, and that the alleged conduct could
4  not have resulted in severe emotional distress.  (Defs.' Reply Br. at 6.)

Conduct necessary to support a claim for intentional infliction of emotional distress "falls at the very extreme edge of the spectrum of possible conduct." <u>Watts v. Golden Age Nursing Home</u>, 619 P.2d 1032, 1035 (Ariz. 1980).  A claims representative who told an insured that he "could not stand people who made their living off insurance companies," and that he would recommend that the insurer sue the insured for money already paid, did not engage in conduct sufficiently extreme and outrageous to support a claim for relief. <u>Helfond v. Stamper</u>, 716 P.2d 70, 72-73 (Ariz. App. 1986).  Similarly, an employer calling an employee back to work sooner than her doctor recommended, by letter hand-delivered in the hospital, was not regarded as sufficient to state a claim, even in light of the employee's known susceptibility to emotional problems.  <u>Mintz v. Bell Atlantic Sys. Leasing Int'l.</u>, 905 P.2d 559, 563-64 (Ariz. App. 1995) (affirming grant of motion to dismiss).  The employer's "legitimate business purpose" was a relevant factor in the court's decision.  <u>Id.</u>

Plaintiff offers an unreported case and a California case to support his contention that Defendants' acts satisfy the outrageous element.  In <u>Little v. Stuyvesant Life Ins. Co.</u>, 136 Cal. Rptr 653 (Cal. App. 1977), the insurance company ignored the great bulk of medical information it had and withheld that information from the examining physicians in an effort to justify discontinuing disability benefits.  <u>Little</u>, 136 Cal. Rptr. at 659.  Unlike the instant case, the insurance company in <u>Little</u> terminated plaintiff's disability payments. Plaintiff does not cite and the Court's research did not uncover any case holding that conduct similar to that alleged in the Complaint *standing alone* rose to the level of extreme and outrageous conduct, even though disability payments continued uninterrupted.

"It is the duty of the court (rather than the jury) to determine, in the first instance, whether the acts complained of can be considered extreme and outrageous so as to

- 11 -

1   substantiate a claim for relief." Patton v. First Federal Savings & Loan, 578 P.2d 152, 155
2   (Ariz. 1979).  Accepting Plaintiff's allegations as true, the Court finds the conduct
3   complained of in this case cannot be considered extreme and outrageous.  Defendants
4   conducted a file review of Plaintiff's disability claim, and "cherry-picked" medical
5   information that supported their position with the intention of terminating Plaintiff's
6   monthly payments.  Defendants never spoke to or interacted with Plaintiff.  (Compl. ¶ 48.)
7   Plaintiff learned from his treating psychologist, Dr. Bowers, that Defendants were
8   prepared to render an alleged false report.  (Compl. ¶ 40.)  Boston Mutual never acted
9   upon the recommendation, and Plaintiff's disability payments continued uninterrupted.
10  These actions even fall short of the conduct deemed insufficient in Helfond.

11          As for the "destruction" of documents by Dr. Kilburn, Plaintiff admits that her final
12  report exists, and attached a copy to the Complaint.  (Compl. ¶ 58, Pl.'s Ex. 1.)  Dr.
13  Kilburn's final report lists the thirteen pre-existing documents she reviewed in reaching
14  her conclusion, in addition to the telephonic consultation with Dr. Bowers.  Plaintiff's
15  Exhibit 1 also includes a copy of the letter summarizing the telephonic consultation, with
16  Dr. Bowers' revisions.  The documents that were "destroyed" therefore appear to be only
17  working drafts and notes relating to Dr. Kilburn's final report.  The "destruction" of those
18  documents does not satisfy the requirement of outrageous conduct.  Cases cited by
19  Plaintiff regarding spoliation and destruction of evidence are entirely inapposite.

20          Plaintiff points two other "examples of outrageousness" in support of Count Four,
21  which are also insufficient.  (Pl.'s Br. at 7-8.)  BMI's "long history of providing biased
22  reports" and the former contents of its Web site have nothing to do with Plaintiff's claim.
23  (See Compl. ¶¶ 69-92; Pl.'s Br. at 7-8.)  Plaintiff also points to a letter sent from BMI's
24  counsel to Plaintiff's counsel, in which BMI "threatens" to sue Dr. Morrow for
25  defamation.  (Pl.'s Br. at 8, Pl.'s Ex. 15.)  This letter was sent in response to a letter from
26  Plaintiff's counsel notifying BMI of Plaintiff's objections to the file review and warning of
27  potential litigation.  Plaintiff characterizes this as a "baseless retaliatory letter ... intended
28  to intimidate a disabled, emotionally fragile individual."  (Pl.'s Br. at 9.)  BMI's letter

1  threatens Plaintiff's *counsel* and his law firm, not Plaintiff, and is an unremarkable and
2  everyday aspect of litigation nowhere near the "extreme edge of the spectrum of possible
3  conduct." Watts, 619 P.2d at 1035.

4  While the alleged conduct may support a claim of bad faith, it does not constitute
5  extreme and outrageous conduct, either individually or taken as a whole.  Defendants'
6  motion to dismiss Count Four is granted.

### C.  Count Five - Civil Conspiracy

Count Five alleges that "Defendants have consciously conspired and deliberately pursued a common plan or design to commit unlawful acts to the detriment of [Plaintiff]." (Compl. ¶ 146.)  "Boston Mutual and its co-conspirators have performed multiple acts in furtherance of the conspiracy, [causing damage]."  (Compl. ¶ 147.)

Defendant asserts that Count Five should be dismissed because a principal cannot conspire with its agents for purposes of a civil conspiracy claim. (Defs.' Br. at 9.) Plaintiff responds that Count Five should remain because Plaintiff pled agency in the alternative. (Pl.'s Br. at 5.) Having determined *supra* that the Complaint does not plead agency in the alternative, the Court will address whether Count Five states a claim for which relief can be granted.

A civil conspiracy occurs when two or more people agree to accomplish an unlawful purpose, or to accomplish a lawful object by unlawful means, causing damages. Wells Fargo Bank, 38 P.3d at 36.  However, "there is no such thing as a civil action for conspiracy.  The action is one for damages arising out of the act committed pursuant to the conspiracy." Tovrea Land & Cattle Co. v. Linsenmeyer, 412 P.2d 47, 63 (Ariz. 1966).

Defendants cite case law from several jurisdictions, as well as "common sense," for the proposition that a principal cannot conspire with its agents because one cannot conspire with oneself. (Defs.' Br. at 9.) Defendants thus invoke the "agent's immunity rule," under which an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal. See C.J.S. Conspiracy § 19.

1  However, an agent can be liable for conspiracy if the agent acts out of self-interest that
2  goes beyond the agency relationship. Id.

3  Some Arizona case law supports Defendants' contention. For example, agents and
4  employees of a corporation cannot conspire with their corporate principal or employer
5  when acting in their official capacities on behalf of the corporation and not as individuals
6  for their individual advantage. Perry v. Apache Junction Elementary School Dist., 514
7  P.2d 514, 517 (Ariz. App. 1973). The court in Perry affirmed summary judgment for
8  conspiracy to procure plaintiff's breach of contract, holding that defendant-board
9  members' actions were privileged by virtue of their confidential relationship with the
10 board. Id. However, the court found that plaintiff sufficiently pleaded a cause of action
11 for conspiracy to deny her of due process. Id. As both conspiracies were alleged against
12 the same parties (i.e., school board and board members), it cannot be said that Arizona law
13 does not recognize conspiracies between principals and their agents.

14 No Arizona authority has been found to support Defendants' contention that
15 principals and agents cannot, as a matter of law, be co-conspirators. Additionally, Count
16 Five alleges that "Defendants acted to serve their own interests," albeit in boilerplate
17 language included in every other Count as justifying punitive damages. (Compl. ¶ 148.)
18 Construing the Complaint in a manner most favorable to Plaintiff, Count Five alleges that
19 Defendants acted out of self-interest that goes beyond the agency relationship, and thus
20 states a claim for civil conspiracy to commit bad faith and breach of contract.

21 **D. Count Six - Tortious Interference with Prospective Advantage**

22 Count Six alleges that Defendants intentionally interfered with Plaintiff's
23 "expectations relating to the administration of his disability insurance contract with Boston
24 Mutual." (Compl. ¶ 150.) As with Counts Two and Five, Defendants argue this claim
25 must be dismissed because of the agency relationship; Plaintiff again argues that agency
26 was pled in the alternative. Because Plaintiff did not plead agency in the alternative, the
27 Court will examine whether an agent can tortiously interfere with the principal's business
28 or contract.

A prima facie claim requires that Plaintiff establish (1) the existence of a valid contractual relationship or business expectancy between Plaintiff and Boston Mutual; (2) Defendants' knowledge of that relationship or expectancy; (3) intentional interference by Defendants inducing or causing a breach or termination of the relationship or expectancy; (4) that such interference was improper; and (5) resulting damage to Plaintiff. See Wallace v. Casa Grande Union High School Dist. No. 82 Bd. of Governors, 909 P.2d 486, 494 (Ariz. App. 1995); see also Villodas v. HealthSouth Corp., 338 F. Supp. 2d 1096, 1105 (D. Ariz. 2004).

Tortious interference requires a relationship between the plaintiff and a third party. Ulan v. Vend-A-Coin, Inc., 558 P.2d 741, 745 (Ariz. App. 1976). An agent acting for a principal is, for purposes of the contract, the principal. See Payne v. Pennzoil Corp., 672 P.2d 1322, 1327 (Ariz. App. 1983). Since a party cannot interfere with its own contract, neither can an agent acting for the principal be liable for interference. Id. "This rule makes sense; otherwise, every breach of contract would also involve, because a corporation can act only through its employees, an inducing to breach by the agent who caused the breach to occur." Custom Roofing Co., Inc. v. Alling, 706 P.2d 400, 402 (Ariz. App. 1985). Applying these principles to the immediate context, where Boston Mutual and DRMS acted through Defendants to review Plaintiff's file, Count Six essentially alleges that Boston Mutual and DRMS tortiously interfered with their own contract. (See Compl. ¶ 151.) Plaintiff's claim is therefore properly for breach of contract against Boston Mutual and DRMS.

Alternatively, Count Six must be dismissed for failing to allege that Defendants' interference with Plaintiff's expectancy was improper. The Restatement (Second) of Torts, includes "relations between the parties" as a factor in determining whether interference is improper. "[I]f *A* is *C*'s business advisor, it is proper for him to advise *C*, in good faith and within the scope of *C*'s request for advice, that it would be to his financial advantage to break his contract with *B*, while it would be improper if [*A*] were a volunteer." Restatement (Second) Torts § 767(g), cmt. I. As discussed, Plaintiff clearly

- 15 -

1 alleges that "at all times relevant to this Complaint" Defendants were agents of Boston
2 Mutual and DRMS, and never alleges anything to the contrary. (E.g., Compl. ¶¶ 4, 5, 121,
3 122.) Therefore it was not improper for Defendants to interfere with Plaintiff's
4 expectation, as any interference necessarily occurred on behalf of Boston Mutual and
5 DRMS.

6 Count Six must therefore be dismissed as failing to state a claim for which relief
7 can be granted. Tortious interference with a business expectancy necessarily requires the
8 existence of an expectancy between plaintiff and a third party, with which defendant
9 interferes. In this case, Defendants did not interfere with an expectancy between Plaintiff
10 and a third party because the Defendants operated as agents for Boston Mutual, the
11 contracting party. Even if Defendants were a separate entity from the contracting party,
12 any interference would not be improper because it was done on behalf of the contracting
13 party. Defendants motion to dismiss Count Six is granted.

## CONCLUSION

15 Properly construed, the Complaint asserts causes of action for aiding and abetting
16 bad faith (Count Two), intentional infliction of emotional distress (Count Four),
17 conspiracy to commit bad faith (Count Five), and tortious interference with business
18 expectancy (Count Six). Count Four fails to state a claim insofar as the conduct alleged in
19 the Complaint does not amount to extreme and outrageous conduct. Count Six fails to
20 state a claim because an agent cannot tortiously interfere with a principal's contract when
21 the agent acts within the scope of agency. Accordingly,

22 **IT IS HEREBY ORDERED** granting without prejudice Defendants' motion to
23 dismiss Counts Four and Six.

24 **IT IS FURTHER ORDERED** denying Defendant's motion to dismiss Counts
25 Two and Five.

26 DATED this 2nd day of November, 2007.

27
28

Stephen M. McNamee
United States District Judge